IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Ohio Legal Rights Service, | No. C – 2:04 CV 384 |
| Plaintiff, | |
| v. | Judge Graham |
| The Buckeye Ranch, Inc., et al. | Magistrate Judge King |
| Defendants. | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION

Plaintiff, by its undersigned counsel, pursuant to Federal Rule of Civil Procedure 56(c), moves this Court for the entry of summary judgment and permanent injunction against Defendants. There being no genuine issue of material fact, Plaintiff is entitled to judgment as a matter of law.

Plaintiff has requested and been denied access to records that it is entitled to receive from Defendants, such access being guaranteed by provisions of federal law found in 42 U.S.C. § 10805 and accompanying regulations, as well as state law found in Ohio Revised Code § 5123.60. Further grounds for this motion are set forth in the accompanying memorandum

Plaintiff, additionally, requests that a scheduling conference be held at the earliest possible time that is convenient for the Court to permit the speedy resolution this case requires.

Respectfully submitted,

/s/_____
Michael Kirkman (0009854)
Trial Attorney for Plaintiff
mkirkman@olrs.state.oh.us


/s/_____
Ronald L. Smith (0017024)
Attorney for Plaintiff
rsmith@olrs.state.oh.us


/s/_____
John R. Harrison (0065286)
Attorney for Plaintiff
jharrison@olrs.state.oh.us

Ohio Legal Rights Service
8 East Long Street, Suite 500
Columbus, Ohio 43215
(614) 466-7264
Fax (614) 644-1888


I HEREBY CERTIFY that on this 16th day of June, 2004, a true copy of the foregoing

Motion for Summary Judgment and the accompanying memorandum was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.


/s/Michael Kirkman_____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Ohio Legal Rights Service,

      Plaintiff,

      v.

The Buckeye Ranch, Inc., et al.

      Defendants.

¶ C – 2:04 CV 384

Judge Graham

Magistrate Judge King

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION

I.      INTRODUCTION

Plaintiff, Ohio Legal Rights Service ("OLRS") is the protection and advocacy system ("P & A") created by the Ohio General Assembly and Congress to protect and advocate the rights of people with disabilities, including people with psychiatric disabilities (mental illness). Plaintiff has filed this action to ensure that Defendant, a licensed mental health residential treatment center and certified treatment agency, complies with federal and state law by providing OLRS access to patient records.

OLRS is an agency of the State of Ohio, chartered by statute at Ohio Revised Code section 5123.60.[1] OLRS is designated by the Governor of the State of Ohio as the P & A for people with mental illness pursuant to 42 U.S.C. sections 10801 *et seq.* ("PAIMI Act"). (Exhibit

---

[1] Federal courts should take judicial notice of state statutes to resolve factual matters. "We may take judicial notice of the state statutes, . . ." *Val Decker Packing Co. v. Corn Products Sales Co.*, 411 F.2d 850, 852 (6th Cir., 1969)(citation omitted).

A: Executive Order, designating OLRS as the PAIMI for Ohio and providing necessary assurances, including ¶ 2, access to records).

A.     *Federal Protection and Advocacy for Individuals who are Mentally Ill Act*

Disturbed that individuals with disabilities were treated in an "inhuman and despicable" manner, Congress passed laws, including the PAIMI Act, empowering and funding state P&As to protect and advocate for people with disabilities. *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center*, 97 F.3d 492, 494 (11th Cir. 1996);  *Protection & Advocacy for Persons with Disabilities v. Armstrong*, 266 F.Supp.2d 303, 309 (D.Conn., 2003).  Congress based its determination that a protection and advocacy program was needed on specific findings, 42 U.S.C. § 10801.  Included in these findings was, at (a)(1), a determination that people with mental illness are "vulnerable to abuse and serious injury."

The PAIMI Act provides federal funds to states for the creation of an independent P&A system to "investigate incidents of abuse and neglect of individuals with [mental illness] and to take appropriate action to protect and advocate the rights of such individuals." *Pennsylvania Protection and Advocacy v. Houston*, 228 F.3d 423, 425 (3d Cir. 2000).  The PAIMI Act grants a P&A the power and duty to conduct full investigations[2] of allegations of abuse and neglect when it receives complaints or has probable cause to believe that abuse or neglect has occurred.  42 U.S.C. § 10805; 42 C.F.R. § 51.42; *J.S. Tarwater Development Center; Houston, supra*. Further, as the court in *Armstrong* has recently written, the PAIMI Act:

> specifically charges the State's P & A, which is an independent agency, with the duty to "investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." *Id*. § 10801 (b)(2)(B); see also *id*. § 10805 (a)(1).  In addition, the State's P & A is authorized to, inter alia, "pursue administrative, legal and other

---

[2] For purposes of the PAIMI Act, a "full investigation" is defined as "the access to facilities, clients and records authorized under this part that is necessary for a P&A system to make a determination about whether an allegation of abuse or neglect is taking place or has taken place." 42 C.F.R. § 51.2.

appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment . . ."

*Armstrong*, 266 F. Supp.2d 303, 309-310.

B.    *Ohio statute*

O.R.C. § 5123.60 (A) provides:

[a] legal rights service is hereby created and established to protect and advocate rights of mentally ill persons . . . to receive and act upon complaints concerning institutional and hospital practices and conditions of . . . hospitals for the mentally ill . . .

OLRS' state authority to access records maintained by a residential treatment facility is much broader than federal authority. O.R.C § 5123.60 (E) Pursuant to state law, OLRS may access treatment records of a residential treatment facility without determining that abuse or neglect has occurred or may occur. *Id.* Additionally, state authority generally grants OLRS access to records without client or guardian's consent. *Id. Cf.* O.R.C. § 5122.31 [records shall be kept confidential except ". . . . (B) When disclosure is provided for in this chapter or section 5123.60 of the Revised Code;"]; § 5122.32(G)(creates exception to quality assurance privilege for OLRS). Stated differently, Ohio's statutory scheme for confidentiality of mental health records contains an explicit exception for OLRS access.

Thus, state law provides OLRS with even broader authority than under federal law to monitor the provision of treatment and services to individuals with mental illness throughout the publicly funded mental health system. Federal regulation allows that when a state law grants a P & A greater authority than is authorized under federal law, the P&A may choose to exercise the broader authority under state law. 42 C.F.R. § 51.31(i)("A P&A system may exercise its authority under State law where the authority exceeds the authority required by the Act.")

C.    Background

In this case, OLRS seeks access to two distinct classes of records. The first class of records is those of a 13 year old patient/child. Information obtained by an OLRS investigator indicated that this child suffered a broken wrist either before or during a restraint. (Exhibit B ¶ 14) The investigator also discovered that the child did not receive an x-ray of the wrist until three days after the incidents of restraint. (Exhibit B ¶ 14) The x-ray revealed a "buckle fracture" and was inconclusive as to cause. (Exhibit B, ¶¶ 12, 14) OLRS determined based on this and other information, that probable cause exists to believe that the child may have been subject to abuse and neglect. (Exhibit B ¶¶ 16; Exhibit C, ¶¶ 26-27) OLRS seeks access to the records of the 13 year old child based upon its authority granted in both federal and state law.

The second class of records is a log of seclusion and restraint of residents of Defendant's facility. Licensure rules promulgated by the Ohio Department of Mental Health require Defendant to maintain a log of seclusion or restraint of residents. OAC 5122-30-16; OAC 5122-30-17 (D)(10) Based upon its authority found within federal and state law, OLRS seeks access to the logs maintained by Defendant.

II.    STATEMENT OF FACTS

Plaintiff seeks an injunction to ensure that Defendant, a residential treatment center and certified treatment agency, complies with federal and state law by providing access to patient records when the Plaintiff, Ohio's P & A created by Congress and the Ohio General Assembly to protect and advocate the rights of people with mental illness, has requested the records.

Defendant Buckeye Ranch is a not for profit corporation created under and governed by the laws of the State of Ohio. (Exhibit D, Statement of Continued Existence) Defendant Richard E. Reiser is the executive director and administrator of the Buckeye Ranch. (Exhibit C ¶ 13)

Defendant Michelle Delery Stratman is the Quality Improvement Director of the Buckeye Ranch. (Exhibit E, letter from defendant Stratman to plaintiff)

Buckeye Ranch is a certified mental health agency that operates a residential treatment facility for children with mental illness. Buckeye Ranch's residential treatment facility is licensed by the Ohio Department of Mental Health.[3] Approximately 80 children with mental illness can be served by Buckeye Ranch's licensed residential facilities on any given day.

Beginning on March 22, 2004, the Cincinnati Enquirer published a series of articles exposing widespread abuse and neglect of children throughout the public mental health system. These articles documented serious abuse and neglect in residential treatment facilities for children throughout the state. Buckeye Ranch was listed in the section entitled "Problems at the 10 biggest centers" as having been cited by Ohio Department of Mental Health inspectors for "improper abuse/neglect reporting" and "improper restraints/seclusion." (Exhibit F)

OLRS receives on-going incident reports that occur in children's residential facilities in the mental health system. (Exhibit B ¶ 6; Exhibit C ¶ 5) OLRS has maintained a database of these incident reports in order to monitor alleged incidents of abuse and neglect. (Exhibit B ¶ 7; Exhibit C ¶ 6) As a result of on-going monitoring activities related to incident reports, OLRS regularly conducts investigations of alleged incidents of abuse and neglect including incidents that occur at Buckeye Ranch. (Exhibit B ¶ 8; Exhibit C ¶ 7)

OLRS has investigated several incidents of alleged abuse and neglect that have occurred at the Buckeye Ranch over the past two years. (Exhibit B ¶ 8; Exhibit C ¶ 7) Several of these alleged incidents of abuse and neglect have been substantiated by the Children's Service agency.

---

[3] Defendants assert and therefore stipulate to these facts at p. 2, fn. 3 of the memorandum in support of their motion to dismiss. Should defendants argue that this is a material fact in dispute, plaintiff reserves the right to offer documentary evidence in support of these facts.

(Exhibit B ¶ 9; Exhibit C ¶11)  Some of the incidents of alleged abuse and neglect have occurred during incidents of seclusion and restraint. (Exhibit B ¶10; Exhibit C ¶ 5)

**Abuse / Neglect Investigation Regarding Injury to a 13 Year Old Child**

In February, 2004, OLRS received an incident report regarding an injury to a 13 year old child/patient at Buckeye Ranch. (Exhibit B ¶ 11)  The report stated that the child had been diagnosed with a buckle fracture in her wrist. (Exhibit B ¶ 12) The report further stated "inconclusive as to cause."  (Exhibit B ¶ 12)

After a preliminary investigation that consisted of interviewing staff at the Buckeye Ranch, an OLRS investigator determined that the child had complained of pain in her wrist on February 5, 2004 during an activity; on that date the child was seen by a nurse and was placed on activities restriction; no contra-indications to restraint were indicated by the nurse; during the morning of February 10, 2004, the child was seen by a medical doctor who believed the injury to the wrist to be a strain;  no contra-indications to restraint were indicated by the doctor; after being seen by the doctor, the child was restrained three times on February 10, 2004; the child complained of pain in her wrist that day; an x-ray of the wrist was not obtained until February 13, 2004; the x-ray revealed a buckle fracture.  (Exhibit B ¶ 13-14)

Based on the information discussed above as well as his training and experience, the OLRS investigator determined that there was probable cause to believe that the 13 year old child had been subject to abuse and neglect. (Exhibit B ¶ 16)  As a result of this determination, on or about March 26, 2004 he requested to review the child's records maintained by Buckeye Ranch. (Exhibit B ¶ 17)

On or about March 30, 2004, Defendant Stratman, in her capacity as Quality Improvement Director for Buckeye Ranch, told OLRS' investigator that he would not be

permitted to review the child's records without the consent of the child's guardian. (Exhibit B ¶ 18)  Defendant Stratman told the OLRS investigator that the child's guardian is the local Children's Services agency. (Exhibit B ¶ 18)

**Restraint / Seclusion Logs**

Licensure rules promulgated by the Ohio Department of Mental Health require Buckeye Ranch to maintain a log of seclusion or restraint of residents. OAC 5122-30-16; OAC 5122-30-17 (D)(10)   It is undisputed that Buckeye Ranch maintains such log.

On several occasions, OLRS has made written requests to access the log. (Exhibit C ¶ 19, 22, 24)  On March 9, 2004, Buckeye Ranch, by a letter from Defendant Stratman, refused to provide access to the log.  (Exhibit E)  On April 23, 2004, OLRS reiterated in writing its demand to obtain access to the 13 year old child's record and the seclusion and restraint log. (Exhibit G)  On May 4, 2004, through its counsel, Buckeye Ranch refused to comply with this demand. (Exhibit H)  On June 15, 2004, a portion of the requested records were delivered to plaintiffs' counsel (Exhibit I).  Only limited documents were disclosed; the plaintiff's investigator has not, however, been given unrestricted access to the entire chart. *Id.*

III.    SUMMARY JUDGMENT IS APPROPRIATE WHERE THERE EXISTS NO DISPUTE OF MATERIAL FACT AND THE MOVANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

The 6th Circuit has stated that summary judgment is appropriate,

"where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those facts defined by the substantive law and that are necessary to apply it. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). While a court must draw all inferences in a light most favorable to the non-moving party, it may grant summary judgment if the record, taken as a whole, could not lead a rational trier of fact to find for that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)."

*McKinnie v. Roadway Express, Inc.*, 341 F.3d 554, 557 (6th Cir. 2003)

As explained below, OLRS is entitled to the records of the 13 year old child pursuant to federal law found at 42 U.S.C. § 10805(a)(4)(B) and 42 C.F.R. § 51.41 as well as state law found in Ohio Revised Code § 5123.60. Similarly, under these circumstances the plaintiff's request for the restraint and seclusion log is supported by both its federal and state law authority.

*A. Federal Law Authorizes OLRS to Access the Records of the 13 Year Old Child; Consent of the Guardian, the Local Children's Service Agency, was not Necessary Where OLRS has Determined Probable Cause to Believe that the Child had been Subject to Abuse and Neglect*

OLRS has authority to access the records of the 13 year old child pursuant to 42 U.S.C. § 10805 and 42 C.F.R. § 51.41. 42 U.S.C. § 10805(a)(4) provides that in accordance with 42 U.S.C. § 10806, OLRS shall "have access to all records of—

***

(A) any individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access;
 (B) any individual (including an individual who has died or whose whereabouts are unknown)--
 (i) who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access;
 (ii) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and
 (iii) with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect;
***

Federal regulations implementing the access provisions of the PAMII Act, found at 42 CFR § 51.41 largely mirror the statute. The regulations clarify, as referenced in 42 U.S.C. § 10805(a)(4)(B)(ii), that the state as a guardian includes a political sub-division, such as a Children's Services agency. 42 CFR 51.41(b)(2)(ii)

**B.      OLRS has Determined Probable Cause Exists that the Child has been Subject to Abuse and Neglect**

OLRS has determined probable cause exists that a 13 year old patient/child who suffered a broken wrist may have been subject to abuse and neglect. (Exhibit B ¶ 16; Exhibit C ¶ 26-27). It is apparent that the minor child is unable to provide this consent herself; stated differently, she has no legal capacity to release the records to OLRS.  Thus, the requirement of 42 U.S.C. §10805(a)(4)(A) that OLRS first seek the authorization of the client has no force and effect.[4]

This takes the analysis to §10805(a)(4)(B), which allows unauthorized access if certain conditions are met.  The first standard is not controlling, as the child is 1) not able to provide legal consent, thus her physical and mental condition do not affect the question, and 2) the child's whereabouts are unknown (as anticipated by Congress) and it is impossible to evaluate her capacity in that regard.  Secondly, the child is a ward of the local Children's Service agency.[5] Thus, her guardian / custodian is "the State," whose consent is specifically NOT required by the PAIMI act.  Finally, because OLRS' has made a probable cause determination, the statute requires that the defendant grant it access to the records of the child without the unnecessary delay of being required to seek consent of the guardian.  42 CFR 51.41(b)(2)(ii).

Federal regulation makes clear that OLRS' "determination of 'probable cause' may result from P & A system monitoring or other activities, including observation by P & A personnel,

---

[4]  The general rule of Ohio law is that children lack capacity to make informed decisions regarding health care.  (See Ohio Health Care Provider Law, 1994, Susan Scheutzow Sections 13.08 and 13.09)  Limited statutory exceptions exist, inter alia, O.R.C. § 2151.85 (allowing judicial authorization for abortion upon finding that minor is "sufficiently mature" or would be subject to "abuse" upon notification of parent or guardian). O.R.C. § 2111.13 (C) (guardian has power to authorize health care for ward); O.R.C. § 5122.31 (consent of parent or legal guardian required for disclosure of mental health records of minor prepared pursuant to Chapter 5122 of the Revised Code "Hospitalization of the Mentally Ill").To argue to the contrary would require the Court to conclude that the PAIMI act intended to create a  federal "super-capacity" for minors, a conclusion unsupported by the act's language.

[5]  CSB is a statutorily created body, pursuant to O.R.C. Chapter 5153.  Section 5153.02 specifies that the child protective function may be lodged under a board, as in this case; in the county job and family services department; or in a private or government agency selected as a "family service agency."

9

and reviews of monitoring and other reports prepared by others pertaining to individuals with

mental illness *or to general conditions affecting their health and safety.*"  [Emphasis added. 42

C.F.R. § 51.31 (g)]. In the commentary to the PAMII regulations, the U.S. Department of Health

and Human Services has stated:

> A large number of respondents believed that an incident of abuse or neglect should refer
> not only to a particular individual, but also to general conditions or problems that affect
> many or all individuals in a facility. They argued that neither the Act nor case law
> imposes an individual-specific probable cause requirement. The Department agrees and
> has provided for this under conduct of P&A activities in 51.31(g) by including general
> conditions affecting health or safety as well as in 51.41(b)(2)(iii) by including that a P&A
> system may determine that an individual with mental illness "may be" subject to abuse or
> neglect. (62 Federal Register 53548, 53559).

OLRS determined through its investigation, that probable cause exists to believe abuse and

neglect may have occurred and may occur again to the 13 year old child and others.  (Exhibit B ¶

16; Exhibit C ¶ 26-27)

Cases interpreting probable cause have consistently held that the P & A is the final arbiter

regarding the determination of probable cause.  *See Arizona Ctr. For Disability Law v. Allen*,

197 F.R.D. 689, 693 (D. Ariz. 2000); *Office of Protection and Advocacy for Persons with

Disabilities v. Armstrong*, 266 F. Supp.2d 303, 320-321 (D. Conn. 2003); *Center for Legal

Advocacy v. Earnest*, 188 F. Supp. 2d 1251, 1257 (D. Colo. 2002), *rev'd on other grounds*, 320

F.3d 1107 (10th Cir. 2003); *Maryland Disability Law Center v. Mount Washington Pediatric

Hospital*, 664 A.2d 16, 24 (Md. App. 1995); *Mississipi Protection and Advocacy System, Inc. v.

Cotton*, 929 F.2d 1054, 1056 (5th Cir. 1991); *Robbins v. Budke*, 739 F. Supp. 1479, 1482 (D.

N.M. 1990).   Probable cause is defined in 42 C.F.R. § 51.2 as:

> reasonable grounds for belief that an individual with mental illness has been, or may be at
> significant risk for being subject to abuse or neglect.  The individual making such
> determination may base the decision on reasonable inferences drawn from his or her

experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect.[6]

The regulations make clear that probable cause may be based on a belief that an individual "has been or may be subject to abuse or neglect." 42 C.F.R. 51.41(b)(2)(iii).

In this circumstance, not only did plaintiff have the individual complaint, but it and its investigator were aware of a wealth of other information related to the defendants' program. For example, beginning on March 22, 2004, the Cincinnati Enquirer published a series of articles exposing widespread abuse and neglect of children throughout the public mental health system. (Exhibit D; Exhibit C ¶ 17) These articles documented serious abuse and neglect in residential treatment facilities for children throughout the state. (Exhibit D; Exhibit C ¶ 17) Buckeye Ranch was listed in the section entitled "Problems at the 10 biggest centers" as having been cited by Ohio Department of Mental Health inspectors for "improper abuse/neglect reporting" and "improper restraints/seclusion." (Exhibit D; Exhibit C ¶ 17)

In addition to this information, plaintiff receives on-going reports that related to incidents that occur in children's residential facilities. OLRS has maintained a database of incident reports

---

[6] 42 C.F.R. 51.2 defines abuse and neglect as follows:

Abuse means any act or failure to act by an employee of a facility rendering care or treatment which was performed, or which was failed to be performed, knowingly, recklessly, or intentionally, and which caused, or may have caused, injury or death to an individual with mental illness, and includes but is not limited to acts such as: rape or sexual assault; striking; the use of excessive force when placing an individual with mental illness in bodily restrains; the use of bodily or chemical restraints which is not in compliance with Federal and State laws and regulations; verbal, nonverbal, mental and emotional harassment; and any other practice which is likely to cause immediate physical or psychological harm or result in long-term harm if such practices continue.

Neglect means a negligent act or omission by an individual responsible for providing services in a facility rendering care or treatment which caused or may have caused injury or death to an individual with mental illness or which placed an individual with mental illness at risk of injury or death, and includes, but is not limited to, acts or omissions such as failure to: establish or carry out an appropriate individual program or treatment plan (including a discharge plan); provide adequate nutrition, clothing, or health care; and the failure to provide a safe environment which also includes failure to maintain adequate numbers of appropriately trained staff.

in order to monitor incidents of abuse and neglect. (Exhibit B ¶ 6; Exhibit C ¶ 5)   As a result of

on-going monitoring activities related to incident reports, OLRS regularly conducts

investigations of alleged incidents of abuse and neglect including incidents that occur at Buckeye

Ranch.  (Exhibit B ¶ 7; Exhibit C ¶ 6)  As part of this on-going monitoring process, OLRS

received an incident report regarding the 13 year old child who is the subject of this case.

(Exhibit B ¶ 11; Exhibit C ¶ 23)

   OLRS has investigated several incidents of alleged abuse and neglect that have occurred

at the Buckeye Ranch over the past two years. (Exhibit B ¶ 8; Exhibit C ¶ 10)  Several of these

alleged incidents of abuse and neglect have been substantiated by the Children's Service agency.

(Exhibit B ¶ 9; Exhibit C ¶ 11)    Some of the incidents of alleged abuse and neglect have

occurred during incidents of seclusion and restraint. (Exhibit B ¶ 10; Exhibit C ¶ 5)

   The report OLRS received indicated that a child residing at Buckeye Ranch had suffered

a buckle fracture that was inconclusive as to cause. (Exhibit B ¶ 11-12)  An OLRS investigator

then conducted interviews with staff of Buckeye Ranch. (Exhibit B ¶ 13)  The investigator

learned that the child had suffered a broken wrist, possibly during one of three incidents of

restraint; the child had complained of pain in her wrist before and after the incidents of restraint;

and was not x-rayed until three days later, thus suggesting neglect related to appropriate medical

care.  (Exhibit B ¶ 14)  The investigator determined based upon his training and experience in

investigating incidents of abuse and neglect that probable cause exists that abuse or neglect of

the child may have occurred. (Exhibit B ¶ 16)

   Related to this point, the regulation makes clear that access to the records must be granted

"*promptly*."  [Emphasis added. 42 CFR 51.41(a)]  OLRS made its initial request for the child's

records on or about March 26, 2004.  (Exhibit B ¶ 15)  Limited disclosure of records was

provided to counsel for plaintiff by defendants' counsel on June 15, 2004, but the plaintiff's investigator has not been given access to the entire chart.  (Exhibit I). Of significance here, the defendants have still not conformed their conduct to the law.  Instead, they have insisted on obtaining consent from the State guardian, in contrast to section 10805(a)(4)(B) which specifically allows PAIMI access to the records without such authorization.[7]

This is not the scenario Congress envisioned.  Some 3 months after the fact, after litigation has been filed, the defendants have reluctantly made a partial submission of records through their counsel in the litigation.[8]  Congress intended that there be prompt, if not immediate, access to the child's records to determine whether in fact the injuries to the child were a result of abuse and neglect.  Having established probable cause of abuse and neglect, and because the guardian is the local Children's Service agency, an agency of county government, a political subdivision of the state, and having already been delayed by Defendants' refusal to provide the records, OLRS is entitled to *immediate* access under Section 10805(a)(4)(B) of the PAMII Act and regulations found at 42 CFR 51.41(b)(2).

C.      *State Law Authorizes OLRS to Access the Records of the 13 Year Old Child*

OLRS has broad authority pursuant to Ohio Revised Code § 5123.60 to access the records in question maintained by Buckeye Ranch.  Buckeye Ranch is a certified[9] mental health

---

[7] Plaintiff notes that defendants have raised this issue as a defense in their motion to dismiss, filed on June 8, 2004 (Doc. #4).  Plaintiff will respond fully to that motion in a timely fashion, and hereby reserves that response.  It is clear, however, that this issue is one that is capable of repetition while evading review, and that even if the defendants have provided the plaintiffs with complete access to the chart, which they have not, their failure to conform their conduct to the law defeats any claim of mootness.

[8] Given that the disclosure is not complete and noting its timing, after the defendants had raised Article III mootness concerns in their 12(b) motion, this Court could conclude that the disclosure was made to gain legal advantage in this case rather than to facilitate the investigator's inquiry.

[9] Certification means the written authorization from the Ohio Department of Mental Health for an agency (such as Buckeye Ranch) to operate specific mental health services or activities according to Chapters 5122-24 to 5122-29 of the Administrative Code.  OAC 5122-24-01 (16)

agency that operates a community residential treatment facility licensed[10] by the Ohio

Department of Mental Health for children with mental illness.[11]

Buckeye Ranch is subject to the provision of O.R.C. § 5123.60 (E).  This provision

provides, in pertinent part, that OLRS and its staff:

" . . . shall have ready access to the following:

(1) During normal business hours and at other reasonable times, all records relating to expenditures of state and federal funds or to the commitment, care, treatment, and habilitation of all persons represented by the legal rights service, including those who may be represented pursuant to division (L) of this section, or persons detained, hospitalized, institutionalized, or receiving services under this chapter or Chapter 340., 5119., 5122., or 5126. of the Revised Code that are records maintained by the following entities providing services for those persons: departments; institutions; hospitals; community residential facilities; boards of alcohol, drug addiction, and mental health services; county boards of mental retardation and developmental disabilities; contract agencies of those boards; and any other entity providing services to persons who may be represented by the service pursuant to division (L) of this section;

* * *

This statute requires that OLRS staff be granted ready access to records of two types of

individuals:

(1) All persons represented by OLRS, including those represented pursuant to O.R.C. § 5123.60 (L)[12], and

(2) All persons detained, hospitalized, institutionalized, or receiving services under Chapters 5123., 340., 5119., 5122., or 5126. of the Revised Code.

_____

[10] Licensure of residential treatment facilities is the process where the Ohio Department of Mental Health grants permission to operate the facility.  Licensure of residential treatment facilities is governed under Chapter 5122-30 of the Administrative Code.
[11] See discussion in note 2, supra, regarding these facts.
[12] Division (L) of § 5123.60 allows OLRS to assist persons with disabilities other than mental illness, mental retardation, or other developmental disabilities, pursuant to various federal grants.  Division (L) was added to the statute through House Bill 152, effective July 1, 1993.  Before that date, division (E) required that OLRS staff be given ready access to all records relating to:

the commitment, care, treatment, and habilitation of all persons represented by the legal rights service or detained, hospitalized, institutionalized, or receiving services under this chapter or Chapter 340., 5119., 5122., or 5126. of the Revised Code.

This action seeks access to records of individuals under category (2). As a licensed Type I community residential treatment facility, Buckeye Ranch provides mental health services in accordance with OAC 5122-30-29. This rule requires Buckeye Ranch to be certified in accordance with OAC Chapters 5122-24 to 5122-29. As an agency[13] operating a licensed residential facility, Buckeye Ranch provides services to its residents pursuant to Chapters 340 and 5119 of the Ohio Revised Code.

The Buckeye Ranch is in violation of O.R.C. § 5123.60 by the refusal to grant OLRS' request to access to the records of the 13 year old child.

D.     *Federal Law Requires OLRS Access to the Restraint and Seclusion Logs*

There is no question that the defendants are required to and maintain logs that document incidents of restraint and seclusion. The logs set out incidents where a child is mechanically restrained or physically secluded by treatment staff. As noted above, the definition of abuse under PAIMI includes "the use of excessive force when placing an individual with mental illness in bodily restrains; the use of bodily or chemical restraints which is not in compliance with Federal and State laws and regulations. . . ." 45 C.F.R. § 51.2 Neglect includes "failure to: establish or carry out an appropriate individual program or treatment plan (including a discharge plan); . . . ; and the failure to provide a safe environment which also includes failure to maintain adequate numbers of appropriately trained staff." *Id*.

---

[13] Pursuant to OAC 5122-24-01 (11) "agency means:
(a) Any agency, subcontract agency, facility, or organization funded by a community mental health board to provide mental health services listed in section 340.09 of the Revised Code;
(b) Any community mental health board approved by the department [of Mental Health] in accordance with division (A)(6) of section 340.03 of the Revised Code, to provide any of the mental health services listed in section 340.09 of the Revised Code, or any mental health board determined by the department to be providing a service subject to department approval;
(c) Any residential facility licensed according to section 5119.22 of the Revised Code that provides any of the mental health services listed in rules 5122-29-03 to 5122-29 of the Administrative Code; and
(d) Any agency providing a service approved by the community mental health board and the director of mental health as listed in division (R) of section 340.09 of the Revised Code."

Based on complaints, newspaper reports, and monitoring of reports from the facility, there is also no question that plaintiff has cause to believe that abuse or neglect may be occurring at defendants' facility. As noted above, federal regulations anticipate that "determination of 'probable cause' may result from P & A system monitoring or other activities, including observation by P & A personnel, and reviews of monitoring and other reports prepared by others pertaining to individuals with mental illness or to general conditions affecting their health and safety."  42 C.F.R. § 51.31 (g).

Based on the extensive information gathered by the plaintiff, access to the logs kept by defendant was plainly authorized by the PAIMI Act for every child whose guardian is a public agency, such as CSB. Even for those children who are still under the custody of their parents (a number that plaintiff suspects would be very low), the regulations require that the defendant promptly furnish identifying the guardian in order that the PAIMI may seek authorization. 42 C.F.R. § 51.43 ("[T]he P&A system shall be provided promptly with a written statement of reasons, including, in the case of a denial for alleged lack of authorization, the name, address and telephone number of the legal guardian, conservator, or other legal representative of an individual with mental illness.")

This, defendants have not done.  Their reason to deny was, as stated by defendant Stratman, that "the Buckeye Ranch is not comfortable forwarding these logs to" OLRS.  (Exhibit E). [14]  No information regarding who the guardian is or their whereabouts has been forthcoming.

---

[14]  Subsequently, defendants' legal counsel raised concerns regarding HIPAA privacy regulations (Exhibit H), and these concerns are reflected in the previously discussed 12b motion filed by defendants.  Again, plaintiffs will address these concerns in due course in responding to that motion.  Briefly, HIPAA, among other points, allows for P & A access as such disclosure is required by state or federal)law. 45 C.F.R. § 512(a)(1)  *See* 65 Fed. Reg. 82461, 82666 (provision required to harmonize HIPAA privacy requirements with P&A access).

That defendants are reluctant or burdened by the request does not resolve the question; Congress has already resolved that equation in favor of the health and safety of the defendants' young residents.[15]  Defendants must provide access to the records or provide a legally defensible position, notice to plaintiff, and, to the extent that guardian authorization is needed, names and addresses of guardians to allow plaintiff to seek such authorization.

E.      *State law allows OLRS access to the Restraint and Seclusion Logs*

Plaintiffs' state law access to the logs in question, as before, provides both a simpler analysis and a plainer result to the inquiry at hand.  No cause is required, and the class of records sought plainly falls into those that the General Assembly intended plaintiff's investigators to access.  Section 5123.60 provides that OLRS and its staff " . . . shall have ready access to . . .  all records relating to the commitment, care, treatment, and habilitation of all persons . . . receiving services under this chapter or Chapter 340, 5119, 5122, or 5126 of the Revised Code that are records maintained by the following entities providing services for those persons: . . . community residential facilities;  . . .  [and] contract agencies of those boards; . . . ."

Plaintiff is hard pressed to understand any interpretation of this plain legislative mandate that justifies defendants' resistance to the request for the logs.  Plaintiff is particularly confounded that defendants would choose to deny access to a record that is so plainly representative of activity with the potential for abuse or neglect to occur, and thus so closely related to the plaintiffs' mandate to investigate such incidents.

Given the plain language of the state statute, defendants must provide the plaintiff with ready access to these records.

---

[15] This case does not present the question of whether <u>PAIMI</u> supports an ongoing or prospective request for access to these logs.  Rather, plaintiff seeks PAIMI access to the logs based on a single request which is amply supported by probable cause that abuse and neglect may be occurring at the defendants' facility. Plaintiff notes, however, that ongoing access to the logs is requested and supported by its state charter, as argued below.

F.    *OLRS' Access Authority Includes the Right to Inspect and Copy Records*

OLRS' access authority includes the right to inspect and also to copy records.  42 C.F.R.

§ 51.41(e)   The regulation states that "[a] P&A system shall be permitted to inspect and copy

records, subject to a reasonable charge to offset duplicating costs." *Id.*   The question of

duplicating costs is not before this court, as the defendants have not made a request for costs.

IV.    PERMANENT INJUNCTIVE RELIEF IS APPROPRIATE

Permanent injunctive relief is appropriate in this instance as OLRS has demonstrated that

it is entitled to the records in question pursuant to both federal and state law.  Injunctive relief is

available when there is no adequate remedy at law and the balance of equities favors the moving

party.  See 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2944

at 394 (1973 and 1992 Supp.)  Relying on this formula, most courts that have considered whether

to grant an injunction in a PAIMI context have held that the injunction should be granted.  *See*

*Alabama Disabilities Advocacy Program v. Tarwarter Developmental Ctr., aff'd*, 97 F.3d 492

(11th Cir. 1996), 894 F. Supp. 424 (M.D. Ala. 1995)(permanent injunction); *Mississippi Prot. &*

*Advocacy Sys. Inc. v. Cotton*, 929 F.2d 1054 (5th Cir. 1991)(mandatory injunction); *Iowa Prot. &*

*Advocacy Serv., Inc. v. Gerard Treatment Programs L.L.C.*, 152 F. Supp.2d 1150 (N.D. Iowa

June 25, 2001), <u>modified</u> July 27, 2001 (preliminary injunction); *Wisconsin Coalition For*

*Advocacy v. Czaplewski*, 131 F. Supp.2d 1039 (E.D. Wisc. 2001)(preliminary injunction);

*Advocacy Ctr. v. Stalder*, 128 F. Supp. 358 (M.D. La. 1999)(permanent injunction); *Oklahoma*

*Disability Law Ctr., Inc. v. Dillon Family & Youth Servs., Inc.*, 879 F. Supp. 1110 (N.D. Okla.

1995)(permanent injunction); *Robbins v. Budke*, 739 F. Supp. 1479 (D.N.M. 1990)(permanent

injunction).  As there are no cases in the Sixth Circuit applying standards for permanent

injunctive relief in the PAIMI context, this Court should be persuaded by the courts that have considered this issue and should likewise grant Plaintiff permanent injunctive relief.

Without the issuance of injunctive relief, OLRS will be unable to fulfill its public mandate from Congress and the General Assembly to investigate alleged abuse and neglect and to monitor the treatment of children with mental illness residing in publicly funded, community residential treatment facilities in this state. OLRS continues to suffer irreparable injury as Buckeye Ranch's refusal to provide access to records prevents the agency from conducting an investigation pursuant to its mandate under federal and state law into whether abuse or neglect of these children has occurred and is occurring.

## V.  CONCLUSION

There is a growing national consensus in mental health that use of seclusion and restraint in residential facilities is treatment failure, not a treatment intervention. *See* Stefan, *Legal and Regulatory Aspects of Seclusion and Restraint in Mental Health Settings*, p.3 (National Technical Assistance Center for State Mental Health Planning, Summer/Fall 2002)(Exhibit J);  *Position Statement on Seclusion and Restraint*, National Association of State Mental Health Program Directors, July 13, 1999 (Exhibit K). Congress has recently spoken to related issues in the Children's' Health Act of 2000, 42 U.S.C. § 290jj *et seq.* (setting out national standards requiring reports of deaths in restraint episodes, and further defining the use of restraint in children's' facilities.)

An important component of these reforms is an independent, external review.  Congress recognized this in creating the PAIMI, and in requiring access to records, including unauthorized access to records in some cases, where necessary to conduct an investigation into possible abuse and neglect.

This case presents just such a circumstance. For the foregoing reasons, Plaintiff respectfully requests the Court grant summary judgment in favor of Plaintiff declaring that Defendants have violated Plaintiff's right to access records, and enter an injunction prohibiting Defendants from failing to provide OLRS with immediate access to, including copies of, the records in question.

Respectfully submitted,


/s/_____
Michael Kirkman (0009854)
Trial Attorney for Plaintiff
mkirkman@olrs.state.oh.us


/s/_____
Ronald L. Smith (0017024)
Attorney for Plaintiff
rsmith@olrs.state.oh.us


/s/_____
John R. Harrison (0065286)
Attorney for Plaintiff
jharrison@olrs.state.oh.us

Ohio Legal Rights Service
8 East Long Street, Suite 500
Columbus, Ohio 43215
(614) 466-7264
Fax (614) 644-1888